J-A27040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AUGUST BAKER AND DIANA BAKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PPL ELECTRIC UTILITIES | : | No. 497 MDA 2023 |
| CORPORATION AND T & D POWER, | : | |
| INC. | : | |

Appeal from the Judgment Entered March 6, 2023
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2015-04264

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: FEBRUARY 8, 2024**

Appellants, August Baker and Diana Baker ("the Bakers"), appeal from the judgment entered in the Court of Common Pleas of Lackawanna County in favor of Appellees, PPL Electric Utilities ("PPL Electric") and T&D Power, Inc. ("T&D Power"), following a non-jury trial. After a careful review, we affirm.

The relevant facts and procedural history have been aptly set forth by the trial court, in part, as follows:

> [The Bakers] claim ownership of a parcel of real property situated on Bell Mountain in Dickson City and Scott Township, Lackawanna County, based on two deeds from 2009 and 2013. That parcel is referred to throughout the litigation as the Edginton Tract. [PPL Electric] claims a right-of-way interest across the Edginton Tract under a 1969 right-of-way agreement ("ROW Agreement") with Lackawanna County after the Lackawanna

---

[*] Former Justice specially assigned to the Superior Court.

County Treasurer's Office conducted a tax sale on August 27, 1965, and then acknowledged a deed to the Lackawanna County Commissioners on December 21, 1965.

[PPL Electric] presently maintains two electrical transmission lines on the right-of-way. [PPL Electric] has also cleared trees and brush and constructed roads to access the lines over the mountain terrain. One of [PPL Electric's] transmission lines was constructed in 1970. The parties dispute the timeline regarding construction of the second transmission line; however, the construction occurred after [the Bakers] received a quit-claim deed to the Edginton Tract in 2009 for $7,500.

On July 7, 2015, and following construction of the second transmission line through the Edginton Tract, [the Bakers] filed [a complaint] against [PPL Electric] and one of its contractors, T&D Power…seeking declaratory relief and damages. [Specifically, the Bakers asserted] claims for: 1) declaratory judgment; 2) unjust enrichment; 3) conversion; 4) trespass to land; and 5) trespass to personal property. [The Bakers specifically sought a declaration that PPL Electric had no rights over the Edginton Tract.[1] Appellees filed answers with new matter.[2]]

On February 9, 2022, the parties filed a Joint Motion to Bifurcate Trial, which [the trial court] granted. The parties agreed to bifurcate the issues of liability and damages, and this matter then proceeded to a non-jury trial on the issue of liability against [Appellees] commencing on August 25, 2022.

---

[1] In response to the complaint, PPL Electric filed preliminary objections, which T&D Power joined. By order entered on September 30, 2015, the trial court granted the preliminary objections for a more specific pleading, as well as granted the motion to strike the Bakers' request for attorneys' fees and punitive damages. On October 14, 2015, the Bakers filed an amended complaint against Appellees.

[2] On July 27, 2017, PPL Electric filed a motion for summary judgment, and T&D Power joined the motion. On November 13, 2017, the Bakers filed a motion for summary judgment. By order and opinion entered on January 18, 2018, the trial court denied Appellees' motion for summary judgment. On March 20, 2018, the trial court denied the Bakers' motion for summary judgment.

Moreover, on April 1, 2021, Appellees filed a joint motion for the entry of judgment of *non pros*, which the trial court denied on July 6, 2021.

***

[Based on the evidence presented at the non-jury trial, the trial court made the following findings of fact:] The Bakers are husband and wife. [Mr. Baker] holds both a bachelor's and master's degree in civil engineering, and [he] is registered in the Commonwealth of Pennsylvania as a Professional Land Surveyor and a Professional Engineer. [N.T.,] 8/25/22, at 9. [Mrs. Baker] is employed by the Pennsylvania Department of Transportation as a Right-of-Way Specialist.

[PPL Electric] is a regulated public utility and holds the statutory power of eminent domain. [PPL Electric contracted with T&D Power, which engaged in various construction projects related to electrical towers and electric lines on the subject property.]

The Edginton Tract is a seventy-seven-acre parcel and located in both Dickson City and Scott Township. [*Id.*] at 13[.] The property is situated on Bell Mountain, above the Scranton-Carbondale Highway and a Wegmans Food Markets location. [N.T.,] 8/26/22, at 61-65[.] Despite its location near commercial development in Dickson City, the testimony of both [] Mr. Baker and [PPL Electric's] Senior Right-of-Way Specialist, Chad Huber, established that the Edginton Tract is difficult to access due to the mountainous terrain. [N.T.,] 8/25/22, at 51[; N.T.,] 8/26/22, at 60, 64[.]

[PPL Electric] constructed and currently maintains two large electrical transmission lines, which traverse a portion of the Edginton Tract in Dickson City based on the ROW Agreement with Lackawanna County.

The first transmission line is the 230kV Summit-Lackawanna line, which was constructed in 1970 and was formerly referred to as the Peckville-Stanton line. [N.T.,] 8/26/22, at 92. Mr. Huber testified that the Summit-Lackawanna line serves 32,000 customers in the immediate vicinity. [*Id.*] at 57, 59-60. [According to Mr. Huber,] [t]he Summit-Lackawanna line serves a state hospital, a sewage treatment plant, a natural gas compressor station, and a water provider[.] *Id.* at 60.

Per Mr. Huber, [PPL Electric] is engaged in a multi-year process to build and improve the Summit-Lackawanna transmission line due to the age and deterioration of the original steel lattice towers. *Id.* at 58-59. The plan involves replacing two lattice towers for the Summit-Lackawanna line on the

Edginton Tract and replacing them with monopole structures. *Id.* Mr. Huber testified that the Summit-Lackawanna line towers currently on the Edginton Tract are somewhere between thirteen and fourteen stories tall. *Id.* at 59.

At trial, Mr. Huber used street-view images available through Google Maps to show that the Summit-Lackawanna line and its towers are observable from Business Route 6, below Bell Mountain. *Id.* at 63-64. Mr. Huber also used satellite images available through Google Maps to show that the Summit-Lackawanna line is located on the south or southeast side of the Edginton Tract. *Id.* at 65.

The second transmission line is the 500kV Shickshinny-Lackawanna line, which is part of the larger Susquehanna-Roseland project, jointly developed by [PPL Electric] and PJM, the independent system operator. [*Id.*] at 86. The Susquehanna-Roseland project was deemed necessary by PJM in 2006 or 2007 to address reliability needs in the electric grid. [*Id.*] *See Energy Conservation Council of Pennsylvania v. Pub. Util. Comm'n (Susquehanna-Roseland Appeal*), 25 A.3d 440, 442-43 (Pa. Cmwlth. 2011) ("PJM's 2007 and 2008 [regional transmission expansion plan] identified the need for a new line between Pennsylvania and New Jersey because forecasts reflected that transmission facilities in Pennsylvania would be overloaded by early 2013, *i.e.*, loading on the transmission facilities was projected to exceed applicable ratings, which may cause permanent damage to transmission infrastructure and widespread power outages.").

In the construction phase of the Susquehanna-Roseland project, [PPL Electric] built the new transmission line, in part, through existing corridors. [N.T.,] 8/26/22, at 88. Ronald Reybitz, [PPL Electric's] associate general counsel, testified that construction on the new transmission line was completed in 2015. *Id.* at 90.

Mr. Huber used satellite images to show that the Shickshinny-Lackawanna line is located on the north or northwest side of the Edginton Tract. [*Id.*] at 65. The satellite images used by Mr. Huber in his testimony showed that the Edginton Tract is undeveloped [except for] the two transmission lines crossing the property.

Construction of the 500vK Shickshinny-Lackawanna line on the Edginton Tract began in the spring of 2012, as acknowledged by [Mr.] Baker. [N.T.,] 8/25/22, at 60-61; [N.T.,] 8/30/22, at 34-

35, 37. Mr. Huber used satellite images dated September 2012 to show that trees had been cleared on the Edginton Tract around that time. [N.T.,] 8/26/22, at 66. Per the testimony of Mr. Baker, [PPL Electric] and its contractors began blasting, removing stone, and constructing roads on the Edginton Tract around Labor Day in 2013. [N.T.,] 8/30/22, at 35-36. [PPL Electric's] representative, Mr. Huber, testified that the Shickshinny-Lackawanna line was completed around 2013 or 2014 and existed on satellite images in 2014. [N.T.,] 8/26/22, at 65-66. From Mr. Baker's testimony, [PPL Electric's] alleged stone removal and road construction on the Edginton Tract prompted the litigation by [the Bakers].

In the years prior to construction of the Shickshinny-Lackawanna line, [PPL Electric] engaged directly with [the Bakers] to discuss the parties' property rights in the area and the timeline of construction. [*Id.*] at 85, 90-92; [N.T.,] 8/30/22, at 77-78, 81-82[.]

[The Bakers] claim title to the Edginton Tract by way of two quit-claim deeds: (i) a deed from Phyllis D. Riefenberg and Phyllis D. Riefenberg, Trustee, of the Frank B. Riefenberg Trust dated December 30, 2009, and recorded in the Lackawanna County Recorder of Deeds Office[;] and (ii) a deed from John J. Dunn, Sr. and Joanne M. Dunn, his wife, ("the Dunns") dated December 20 2013, and recorded in the Lackawanna County Recorder of Deeds Office[.]

[Mr.] Baker testified at trial that he envisions developing residential townhouses on the Edginton Tract. [N.T.,] 8/25/22, at 109. Mr. Baker stated that he paid $7,500 in exchange for the deed from Phyllis Riefenberg and the Frank B. Riefenberg Trust in 2009. *Id.* at 88. Mr. Baker acknowledged he did not have a survey done of the property prior to purchase in 2009. *Id.* at 88-89. In exchange for the deed from [the Dunns] in 2013, the [Bakers] paid $10,000.

Two title searchers testified in this matter, David Durkovic for [the Bakers], and Charles Fogarty, for [PPL Electric]. Regarding [the Bakers'] first transaction, Mr. Durkovic completed a title search on December 15, 2009. [*Id.*] at 22. Mr. Durkovic concluded, at that time, that the Frank B. Riefenberg Trust owned three-quarters of an interest and [the Dunns] owned a one-quarter interest. *Id.* Mr. Durkovic noted no exceptions in his title search. *Id.* at 191. Mr. Durkovic also completed title searches of adjacent parcels during the litigation. [*Id.*] at 161, 165-66, 170-75.

Mr. Fogarty conducted two title searches with cover pages dated December 30, 2009, and March 5, 2010. Mr. Fogarty identified several exceptions in his title search, including an outstanding interest of Lackawanna County in the Edginton Tract in his [March 5, 2010,] search report. [N.T.,] 8/30/22, at 67-71.

The parties traced the history of the Edginton Tract back to 1886 as part of the Benjamin McLean warrant, showing two chains of title leading to George T. Edginton,[ who may also have been known as George T. Edington]. [The parties stipulated that,] [b]y 1902, George T. Edginton was the owner of the entire interest in the Edginton Tract. From 1907 to 1908, George T. Edginton entered into a coal lease with Joseph Speicher, which included an option to purchase an undivided one-half interest in the Edginton Tract. In 1908, Joseph Speicher released and surrendered the coal lease back to George T. Edginton. From this point forward, there are multiple clouds or defects to consider in the title to the Edginton Tract.

[The parties further stipulated that,] [o]n July 9, 1909, George T. Edginton entered into a coal lease with Berton E. Davis, which included an option for Berton E. Davis to acquire an undivided one-half interest in the Edginton Tract. On the next day, July 10, 1909, George Edginton and his then spouse, Annie Edginton, conveyed to Berton E. Davis an interest in the Edginton Tract.

Mr. Fogarty opined that George T. Edginton sold a full interest in the Edginton Tract on July 19, 1909. [*Id.*] at 71-72. Per Mr. Fogarty, George T. Edginton "was out of the picture[,]" noting that the deed called for "full title[,]" and "doesn't say half interest." *Id.* at 72.

However, the July 10, 1909, indenture indicates:

This conveyance is made subject to the terms of that certain indenture of lease dated July 9, 1909, wherein said party of the first part leased the coal in, upon, and under said land to said party of the second part.

As of July 10, 1909, when the coal lease option was exercised, Berton E. Davis owned a one-half interest in the Edginton Tract pursuant to the terms of the July 9, 1909, indenture. George T. Edginton retained one-half interest.

[The parties stipulated that] Berton E. Davis died in 1913. At the time of Berton E. Davis's death, Berton E. Davis and his

wife, Verna Davis, had three sons: 1) Charles H. Davis; 2) Ward A. Davis; and 3) Berton E. Davis, Jr. Upon Berton E. Davis's death in 1913, he left a one-third (1/3) undivided interest in his estate to his sons. In 1922, the family proceeded in Orphans' Court for approval of the sale of real estate in Dunmore from the Estate of Berton E. Davis, which included the appointment of Charles H. Davis as Guardian for his younger brother, Berton E. Davis, Jr.

[The parties stipulated that] Verna Davis died in 1938. Verna Davis left her entire estate to her sons. Charles H. Davis and Ward A. Davis were named the executors of Verna Davis's estate. The inventory of Verna Davis's estate included a one-third (1/3) undivided interest in numerous properties in Scranton, and one in Mount Pocono, but the inventory did not list out any real estate in Dickson City or Scott Township. *See* [N.T.,] 8/25/22, at 211.

By operation of the July 10, 1909, coal lease option, [as well as Berton E. Davis's will and Verna Davis's will], Charles H. Davis, Ward A. Davis, and Berton E. Davis, Jr. would have shared whatever interest in the Edginton Tract that Berton E. Davis had upon the death of their parents.

[The parties stipulated that] Ward A. Davis died on April 2, 1963. Ward A. Davis was married and had two sons: 1) Berton L. Davis and 2) William R. Davis. Ward A. Davis's wife, Margaret A. Davis, died on October 16, 1978.

[The parties also stipulated that] Berton E. Davis, Jr. died on January 25, 1976. At the time of his death, Berton E. Davis, Jr. was married to Eleanor V. Davis.

On June 9, 1980, following the 1965 County Treasurer's sale [as] discussed below, Berton E. Davis's interest in the Edginton Tract was conveyed by Charles H. Davis, Eleanor V. Davis, Berton L. Davis, and William R. Davis by way of [a] quit-claim deed to Frank Riefenberg and Anthony A. Lawrence. *See* [PPL Electric] Exh. 12. The quit-claim deed provided that "[t]he purpose of this instrument is to convey, release, or otherwise extinguish whatever interest the grantors as sole surviving heirs of Berton E. Davis have in the [Edginton Tract]." *Id.* As discussed below, Frank Riefenberg claimed an interest in the Edginton Tract at the time from other sources.

[The parties stipulated that,] [p]rior to 1980, there is no deed or instrument conveying any interest in the real estate to any of Berton E. Davis's heirs. There is no known record of a

spouse or heir of Berton E. Davis filing an instrument declaring an ownership interest in the subject premises. There were no other estate or Orphans' Court records to consider. There is also no record of a spouse or heir of Berton E. Davis ever paying property taxes to Lackawanna County regarding the Edginton Trust.

Anthony A. Lawrence and Elizabeth Lawrence conveyed their interest in the Edginton Tract to [the Dunns] on June 14, 1989. [The Dunns] then conveyed their interest in the Edginton Tract to [the Bakers] by way of [a] quit-claim deed dated December 20, 2013.

[The parties stipulated that], [a]fter George T. Edginton's conveyance of a one-half interest in the property to Berton E. Davis in 1909, there is no record of title activity involving the Edginton Tract until 1974.

George T. Edginton died in 1921. George T. Edginton was married to Louise Edginton at the time of his death.

[The parties stipulated that,] [o]n January 4, 1927, a petition was filed in [the] Orphans' Court to compel Louise Edginton, George T. Edginton's third wife, to probate George T. Edginton's will. The petition identified five children as heirs to George T. Edginton: 1) Mrs. Frank Riefenberg; 2) Mrs. Orin R. Swink (Elizabeth Swink); 3) George T. Edginton; 4) Mrs. John K. Lambie; and 5) Mrs. R.J. Waters.

Louise Edginton responded to the petition and filed George T. Edginton's 1913 will and a 1918 codicil for probate. George T. Edginton's will [indicated] a sixth child, Mary N. Freeman. The 1918 codicil devised to Louise Edginton an undivided interest "in all land owned by me in Dickson City borough Pa. and also in all other land wish I may die siesed [*sic*]." Other than this reference, there is no other record more particularly describing the land devised to Louise Edginton in the will or codicil.

George T. Edginton's 1913 will and 1918 codicil devised George T. Edginton's interest in the Edginton Tract to Louise Edginton upon his death and not to any of George T. Edginton's children.

[The parties stipulated that] Louise Edginton died in 1940. The parties supplied no record or evidence of any heirs to Louise Edginton. There is no record of probate.

In the 1913 will, George T. Edginton left the rest and residue of his estate to all of his children to be divided among them in equal shares. The 1918 codicil does not alter this provision.

- 8 -

Addressing any suggestion that George T. Edginton's remaining interest in the Edginton Tract passed to his children, there would be numerous unknown heirs to that interest. At this juncture, and based on the record, it appears that George T. Edginton was survived by six children at the time of his death.

One of George T. Edginton's children, Elizabeth Swink, died in 1953. Frank B. Riefenberg, one of Elizabeth Swink's nephews, was named the executor of her estate. Ms. Swink's will called for her real and personal property to be sold and the proceeds to be divided equally to her nieces and nephews in 1/19 shares. The adjudication of Ms. Swink's estate indicates that one of Ms. Swink's nephews predeceased her, and per the will, that nephew's 1/19 share was given to Ms. Swink's grandnephew, Bruce Edginton.

The parties provided no estate records regarding Geroge T. Edginton's five other children. There is also no record of a spouse, heir, or family member of George T. Edginton paying property taxes on the Edginton Tract until at least 1974 and possibly as late as 1984. Between 1921 and 1974, there is no record of any of George T. Edginton's descendants claiming an ownership interest in the Edginton Tract.

On May 31, 1974, and following the 1965 County Treasurer's sale discussed below, Bruce Edginton and his wife, Audry Edginton, conveyed any interest they had in the Edginton Tract to Frank B. Riefenberg and Irene J. Riefenberg by [a] quit-claim deed. This quit-claim deed indicates that George T. Edginton died intestate in 1921 and was survived by Louise Edginton and Bruce Edginton as his only heirs. [Given the above discussion regarding the Estate of George T. Edginton and the Estate of Elizabeth Swink,] [t]his quit-claim deed recites an inaccurate history regarding George T. Edginton's heirs[.] There is no deed or any other instrument prior to 1974 conveying any interest in the Edginton Tract to Bruce Edginton. [N.T.,] 8/25/22, at 201. At trial, Mr. Baker testified that he did not do anything to determine whether Bruce Edginton held any actual interest to convey title to the Edginton Tract. *Id.* at 38.

As noted [*supra*], Frank B. Riefenberg and Anthony A. Lawrence obtained a quit-claim deed regarding the Berton E. Davis interests in the Edginton Tract in 1980. There is no record that Frank B. Riefenberg filed an action to quiet title regarding the Edginton Tract at any point.

By quit-claim deed dated October 8, 1991, Frank B. Riefenberg and Irene Riefenberg conveyed their interests in the Edginton Tract to the Frank B. Riefenberg Trust.

[The parties stipulated that,] [o]n December 30, 2009, Phyllis D. Riefenberg and Phyllis D. Riefenberg, Trustee of the Frank Riefenberg Trust, executed a quit-claim deed in favor of [the Bakers] regarding Frank B. Riefenberg's interests in the Edginton Tract. [The Bakers] paid $7,500 as consideration. [The Bakers] then obtained the portion of the Berton E. Davis interest that had been previously conveyed to Anthony A. Lawerence and then later to [the Dunns] by quit-claim deed on December 20, 2013. [The Bakers] paid the Dunns $10,000 as consideration.

At trial, Mr. Baker testified regarding his due diligence prior to investing in the Edginton Tract. Mr. Baker stated that he walked on the property, obtained a title search, and spoke to Phyllis Riefenberg prior to executing the December 30, 2009, deed. [*Id.*] at 13-17. Mr. Baker testified that he was not aware that the Summit-Lackawanna line was located on the property at the time of purchase. *Id.* at 16-17. According to Mr. Baker, Ms. Riefenberg later advised Mr. Baker of correspondence from [PPL Electric] regarding the existence of the initial transmission line. *Id.* at 18. However, Mr. Baker also acknowledged at trial that he had noticed one transmission line while walking the Edginton Tract prior to purchase. *Id.* at 17.

Mr. Baker testified that, in December of 2009, he hired David Durkovic to perform a title search prior to purchase. *Id.* at 13-14, 25. Per Mr. Baker, Mr. Durkovic noted no exceptions on the title search. *Id.* As noted above, Mr. Durkovic's initial title search is dated December 15, 2009. Mr. Durkovic testified that his 2009 search did not identify any issues in the title to the Edginton Tract. [*Id.*] at 189. However, Mr. Durkovic conceded at trial that "[t]here's always reasonable doubt on a search when you have so many [e]states." *Id.* at 9, 23.

Mr. Baker testified that he is a licensed land surveyor. *Id.* at 9, 23. Mr. Baker, however, chose not to survey the property at the time of the transaction with Ms. Riefenberg and the Riefenberg Trust. *Id.* at 59, 86-87. Mr. Baker stated he did not personally determine that the transmission lines were on his property until a survey was completed. *Id.* at 58. Mr. Baker obtained a survey from Guy DeAngelo, P.L.S. and Mr. DeAngelo's survey drawing is dated between February 2014 and May 2017. Mr. Baker admitted that if he obtained a survey prior to purchase,

the survey would have defined the boundaries of the Edginton Tract. [*Id.*] at 89. Mr. Baker testified that he visually observed the Peckville-Stanton line (also called the Summit-Lackawanna line) while he was walking on the Edginton Tract prior to purchase. *Id.* at 89-90. Mr. Baker, in his testimony, seemed to agree that the towers associated with the Summit-Lackawanna line were obvious and big. *Id.* at 46.

Mr. DeAngelo did not testify in this matter. Lawrence LaRue, a separate surveyor, testified for [the Bakers] based on Mr. DeAngelo's survey. [N.T.,] 8/30/22, at 27, 31. On cross-examination, Mr. LaRue testified that once the southeast or southwest corner of the Edginton Tract is located, a survey would not be necessary to know that a power line crosses the Edginton Tract. *Id.* at 26-27, 30. Mr. LaRue also testified that research into recorded documents regarding the Sandy McLean warrant and Benjamin McLean warrant boundary, along with walking the property, would [have] show[n] that a power line was located on the Edginton Tract. *Id.* at 28-30.

Mr. Baker also testified that he "had no reason" to have a survey done prior to the transaction with Ms. Riefenberg and the Riefenberg Trust. [N.T.,] 8/25/22, at 88-89. Despite Mr. Baker being a licensed surveyor, [the Bakers] chose not to survey the Edginton Tract in 2009. That was the case even after Mr. Baker observed the noticeable presence of the Summit-Lackawanna line on Bell Mountain. *Id.* at 90.

From the testimony, it appears [the Bakers] made an investment decision not to survey the Edginton Tract at that time. Mr. Baker attempted to downplay this conscious financial decision, even when confronted with his deposition testimony at trial. *See id.* at 86-94. At his deposition, Mr. Baker conceded he proceeded in the transaction with Ms. Riefenberg without a survey or an appraisal, as Ms. Riefenberg was willing to accept $7,500 in exchange for a deed to the Edginton Tract. *Id.* at 88, 92.

[The trial court determined that] Mr. Baker's lack of credibility in this area [was] reflected in the following exchange on cross-examination:

Q. And, in fact, you already stipulated that [PPL Electric has] exercised rights on that land, since 1970, when the first line was built?

A. I can't answer that.

Q. Well, it's a stipulated fact, so I think we agree with it. Would you agree that you stipulated that the line was in place since 1970?

A. Not on my parcel.

Q. Okay. When did they move it to your parcel?

A. When we did the survey and then located that; when that survey was done by me, then I found that it was on my parcel.

Q. Who lifted up the 140-foot towers and moved them onto your parcel after 1970?

A. I can't speak for the prior owners.

Q. It's a simple question. Were these towers, physically, on your property since 1970?

A. After we completed the survey, we determined they were. Prior to that, I would tell you, no.

*Id.* at 58.

Mr. Baker believed the deed from Phyllis Riefenberg and the Frank B. Riefenberg Trust dated December 30, 2009, was a special warranty deed and not a quit-claim deed. *Id.* at 28. [The Bakers] also obtained a deed from [the Dunns] for their interest in the Edginton Tract in 2013, contrary to any assertions by Mr. Baker that the 2009 deed was a special warranty deed. On cross-examination of Mr. Baker, [PPL Electric's counsel] referenced a letter sent to Ms. Riefenberg on March 20, 2009, wherein Ms. Riefenberg was advised of [PPL Electric's] plans to construct an additional line within the existing right-of-way, nine months before the transaction between Ms. Riefenberg and [the Bakers]. *See id.* at 46-48. Mr. Baker acknowledged that any representations from Ms. Riefenberg to [the Bakers] about the existing transmission line prior to the closing would conflict with the letter. *Id.* at 48. However, [the Bakers] never acted against Ms. Riefenberg or the Frank B. Riefenberg Trust. Mr. Baker testified that he did not seek recourse against Ms. Riefenberg because of her age. *See id.* at 66-67. [The Bakers] chose to pursue claims against [PPL Electric].

It also must be noted that several years transpired between [the Bakers'] transaction with Ms. Riefenberg and the Frank B. Riefenberg Trust and the litigation against [Appellees]. On June 8, 2010, [PPL Electric] hand delivered a letter to [the Bakers]

- 12 -

advising them that [PPL Electric] believed it enjoyed a valid right-of-way across the Edginton Tract and would continue to exercise their rights. *Id.* at 55-56; [N.T.,] 8/26/22, at 90-92. Mr. Baker acknowledged the contents of this letter in his testimony. [N.T.,] 8/25/22, at 55-57. Additionally, [the Bakers] and [PPL Electric's] representatives interacted and had at least one meeting in 2010 regarding many of the same factual and legal issues raised at trial[.] *Id.* at 54-57.

Mr. Baker also admitted that he was aware that [PPL Electric] was moving forward with construction on the Edginton Tract in 2012 to build the second transmission line as part of the Susquehanna-Roseland project. *Id.* at 60-61. Mr. Baker testified that he noticed tree clearing in the Edginton Tract in 2012 by [PPL Electric] or their agents, which he acknowledged was part of the construction process. [N.T.,] 8/30/22, at 34-35, 37. Mr. Baker testified that he thought [PPL Electric] "had a legitimate easement across the parcel" at that time. *Id.* at 35, 37. Road construction then began around Labor Day in 2013, according to Mr. Baker. *Id.* at 35. However, Mr. Baker also testified that he had never given [PPL Electric] permission to be on the Edginton Tract. [N.T.,] 8/25/22, at 20. [The trial court determined that] Mr. Baker's testimony in these areas of examination was not credible.

[The trial court further determined] Mr. Baker was…not credible in his testimony about other lawsuits. [PPL Electric's counsel] referenced litigation between [the Bakers] and Wegmans Food Markets over an easement for access to the Edginton Tract during Mr. Baker's cross-examination. Mr. Baker denied that he was sued by Wegmans regarding an easement claimed by [the Bakers] on Wegmans' property. *Id.* at 107-08. Mr. Baker testified that an easement to access the Edginton Tract was negotiated through a different property owner. *Id.* Although Mr. Baker denied being sued by Wegmans, he indicated that the litigation with Wegmans settled upon negotiations with a different property owner. *Id.*

Finally, [the trial court found that] Mr. Baker's testimony in regard to not suing Ms. Riefenberg or the Riefenberg Trust also advanced [PPL Electric's counsel's] arguments that [the Bakers] calculated and timed their challenge to [PPL Electric's] right-of-way interests on the Edginton Tract in the pursuit of money damages following construction of the second transmission line. *Id.* at 64-66.

Against the backdrop of the above discussion, the [trial court found that] the other evidence and testimony at trial established that Lackawanna County maintains outstanding rights and interests in the Edginton Tract.

Returning to the estate histories detailed above, Verna Davis died in 1938, and Louise Edginton died in 1940. Verna Davis's estate did not list the Edginton Tract as an asset. No estate records were offered regarding Louise Edginton. Records from the Lackawanna County Recorder of Deeds reflect a gap in [the Bakers'] chain of title between 1909 and 1974. Real estate taxes on the Edginton Tract were unpaid for an unknown period of time prior to 1965.

Lackawanna County Treasurer's Deed Book Entries confirm that Lackawanna County took action against the Edginton Tract due to the non-payment of taxes in 1965 as follows:

(a) A tax sale occurred on August 27, 1965;

(b) A confirmation *nisi* [was] issued on October 11, 1965;

(c) A confirmation absolute [was] issued on December 21, 1965; and

(d) The County Treasurer then acknowledged a Deed to the County Commissioners for the Edginton Tract and other parcels exposed to the Treasurer's Sale.

*See* [Joint] Exh. 19; [Joint Stipulation of Facts ("Jt. Stip.")] at ¶¶ 44-45, 48-49.[3]

Lackawanna County has apparently advised the parties that it no longer has or can locate a complete set of records pertaining to the Edginton Tract, the 1965 County Treasurer's sale, or the subsequent deed to the Commissioners of Lackawanna County other than the recorded Lackawanna County Treasurer's Deed book entries. *See* Jt. Stip. at ¶ 53[.]

---

[3] The parties filed a joint stipulation of facts with the trial court on August 23, 2022. The trial court noted that, despite the stipulations set forth *supra*, Mr. Durkovic testified he did not find records of the 1965 Treasurer's sale in his title search. Trial Court Opinion, filed 12/14/22, at 19 n.5 (citing N.T., 8/25/22, at 19). Mr. Durkovic conceded that PPL Electric was able to determine that Lackawanna County claimed ownership of the property in 1969, but he was unable to locate these records during his 2009 title search. *Id.* (citing N.T., 8/25/22, at 203).

Lackawanna County is not a named party to this action. It appears that the parties obtained documents from Lackawanna County through informal requests or because Lackawanna County makes records available to title searchers and the general public. ***See*** PPL [Electric] Exh. 8 ([a letter] to PPL [Electric] from Mary F. Rinaldi, Lackawanna County Clerk of Judicial Records). [The trial court finds] the absence of Lackawanna County from this action complicates any reconstruction of the events from time-frames critical to [the trial court's] analysis.

At the heart of [the Bakers'] action is a challenge to the validity of the 1965 sale by the Lackawanna County Treasurer. The December 21, 1965, acknowledgement of deed to the Lackawanna County Commissioners describes the Edginton Tract as "Unknown Owner[,] Bell Mt. Edington Tr.[,] 346.42." ***See*** Jt. Stip. at ¶ 53; [Joint] Exh. 19[.] The description denotes the property as "Edington Tr." [and] not "Edginton Tr." ***Id.*** The same acknowledgement describes the Edginton Tract as being in Ward Three of Dickson City, but the Edginton Tract is actually located in Ward One of Dickson City and in Scott Township. [Bakers] Exh. 12; PPL [Electric] Exh. 19; [N.T.,] 8/25/22, at 137-38[.] The acknowledgement references that the Lackawanna County Treasurer acknowledged the deed to the Lackawanna County Commissioners in open court before the Lackawanna County Court of Common Pleas. ***See*** [Joint] Exh. 19.

Notice of the August 27, 1965, tax sale appeared in *The Scranton Times* on August 6, 1965, August 13, 1965, and August 20, 1965. [Joint] Exh. 17. Each of the notices refer to the property being exposed to sale as "Unknown Owner, Bell Mt. Edington Tr., 346.42". ***Id.*** The notices reflect the same discrepancies identified above. ***Id.***; [N.T.,] 8/25/22, at 148-50. The notices do not list the acreage or reference the block and lot numbers for the Edginton Tract. ***See*** [N.T.,] 8/25/22, at 136. The notices do not identify George T. Edginton, Berton E. Davis, their spouses, or any of their heirs. ***Id.*** at 132-33, 152[.]

The notices, which appeared in *The Scranton Tribune* on August 6, 1965, August 13, 1965, and August 20, 1965, do not identify any properties in Dickson City being exposed at the August 27, 1965, tax sale. [Bakers] Exh. 15; [Joint] Exh. 18; [N.T.,] 8/25/22, at 154.

[The Bakers'] title searcher, Mr. Durkovic, testified that he could not locate a deed from the Lackawanna County Treasurer to

the Lackawanna County Commissioners. [N.T.,] 8/25/22, at 140-41.

[The trial court found] there was no evidence presented by [the Bakers] that the property was redeemed following the 1965 County Treasurer's sale. [PPL Electric's] title searcher, Mr. Fogarty, opined that there was no redemption at that time in his review of the Lackawanna County Treasurer's deed book. [N.T.,] 8/30/22, at 74-77. Mr. Fogarty testified that he reviewed this evidence with [the Bakers] and [Mr. Durkovic] in a meeting prior to April 19, 2010. *Id.* at 77-78, 81. Mr. Fogarty testified that, in his experience, the above situation reflected "[q]uite a mess, but not a unique thing." [*Id.*] at 78, 80-81.

Following the acknowledgement of deed to the Lackawanna County Commissioners in 1965, and for reasons that [could not] be discerned [by the trial court] without speculation due to Lackawanna County's absence from the litigation, the Lackawanna County Tax Claim Bureau sought to collect property taxes from Frank and Irene Riefenberg for the Edginton Tract beginning in 1974.

After the conveyance from Bruce Riefenberg and Audrey Riefenberg by [a] quit-claim deed to Frank and Irene Riefenberg on May 31, 1974, tax claim docket entries show that Frank and Irene Riefenberg failed to pay taxes on the Edginton Tract, leading to a tax sale on December 10, 1975. Jt. Stip. at ¶ 51; [Joint] Exh. 20. However, Frank and Irene Riefenberg redeemed the property on October 1, 1984, nine years later. Jt. Stip. at ¶ 52; [Joint] Exh. 20. In 1980, and during the *interim*, Frank B. Riefenberg and Anthony A. Lawrence obtained a quit-claim deed regarding the Berton E. Davis interest in the Edginton Tract.

[PPL Electric's] title searcher, Charles Fogarty, offered [this] explanation:

> Q. My question is, why would the County expose the property to [a] tax sale noting Frank and Irene Riefenberg as owners if, in fact, the County had title to the property by virtue of the 1965 sale?
>
> A. Because Riefenberg came in and claimed it, and [they] star[ed] taxing him for it. The County doesn't pay taxes. Can't go for tax sale from the County. He came in [during] '74, saying he owned it and became assessed for it.

I don't know whether the assessment was for full title, part title, good title. I don't know. But he failed to pay those taxes that he came in and became assessed for. It went through standard course of a tax sale.

Q. So, as of December 10, 1975, you would agree that the County Tax Assessment Office recognized Frank and Irene Riefenberg as the owners of the property?

A. As one of the owners. They have Lackawanna County on that card also and unknown carried as owner unknown prior to putting in the card. Clear on the card it's not just him.

And as he gets partial interest, the other names are put on there, they don't say what interest those people have, what percentage or whatever on the card.

[N.T.,] 8/30/22, at 118-19.

The real estate appraisal study card maintained by the Lackawanna County Assessor's Office identifies the location as "Edginton Tr. Bell Mountain" and features various typed notations, sections where notations were whited out or crossed out, and handwriting. [Bakers] Exh. 12; PPL [Electric] Exh. 19. The real estate appraisal study card is initially dated May 23, 1974. *Id.* One typed notation indicates, "1974 carried out as unknown owner." *Id.* Another provides, "[r]evision int. to T.C." *Id.* A third typed notation states, "[c]orrect to deed owner." *Id.*

[The Bakers] based their challenge to the 1965 County Treasurer's sale, in part, on another notation that indicates "Out of the Sandy McLean wt." *Id.* As noted above, the Edginton Tract derives from portions of the Benjamin McLean warrant. The Sandy McLean warrant is adjacent to the Benjamin McLean warrant and borders the Edginton Tract. *See* [Bakers] Exh. 20[;] [N.T.,] 8/30/22, at 28.

[The Bakers'] title searcher, Mr. Durkovic, was the Chief Clerk in the Lackawanna County Assessor's Office from January 1976 to May 1979. [N.T.,] 8/25/22, at 112. Mr. Durkovic testified that when he worked in the Assessor's Office, it "was in horrible disarray." *Id.* at 130. Mr. Durkovic opined with regard to the Edginton Tract that "[t]he Assessment Office had a problem with the location. The Ward it was in. The owner of it with the other tax sale." *Id.* at 179. Mr. Durkovic, however, could not locate any

- 17 -

deed from the Lackawanna County Commissioners to Frank and Irene Riefenberg. *Id.* at 119, 140. There was no other evidence presented reflecting a private sale by Lackawanna County of the Lackawanna County Tax Claim Bureau to Frank and Irene Riefenberg.

Furthermore, per Mr. Baker's own testimony, [the Bakers] acknowledge that they never initiated a quiet title action in the Lackawanna County Court of Common Pleas regarding the Edginton Tract. [*Id.*] at 82.

Approximately four years after the Lackawanna County Treasurer acknowledged a deed to the Edginton Tract to the Lackawanna County Commissioners, the Lackawanna County Commissioners executed the ROW Agreement with [PPL Electric] on June 12, 1969[6]. Jt. Stip. at ¶ 54, [Joint] Exh. 21. The ROW Agreement was recorded with the Lackawanna County Recorder of Deeds Office[.] *Id.* The ROW Agreement was additionally filed with the Pennsylvania Public Utilities Commission in March of 1970. Jt. Stip. at ¶ 55; [Joint] Exh. 21.

---

6 Despite the parties' stipulation, it must be noted that Mr. Durkovic testified he did not find the 1969 ROW Agreement in his 2009 title search because the Treasurer's Sale and acknowledgement of deed was indexed against an unknown owner. [N.T.,] 8/25/22, at 120, 156-57. Mr. Durkovic conceded that he was aware from oil and gas leases at the time of his search that [PPL Electric] had an easement to the south of the Edginton Tract and a fee interest in property to the southwest of the Edginton Tract that bisected lands of Penn Anthracite Collieries the same width of the right-of-way on the Edginton Tract in a long straight line. [N.T.,] 8/26/22, at 6-8, 24. Mr. Fogarty also testified that, in 2009, he was able to identify [PPL Electric's] right-of-way on GIS mapping available from Lackawanna County. [N.T.,] 8/30/22, at 66-67, 87-88.

---

The ROW Agreement granted [PPL Electric] and its successors, assigns, and lessees:

> […] the right to construct, operate and maintain, and from time to time to reconstruct its electric lines, including such poles, towers, cables, and wires above and under the surface of the ground, fixtures and apparatus as may be from time to time necessary for the convenient transaction of the business of [PPL Electric], its successors, assigns and lessees upon, across, over, under and along the strip of land 325 feet in width as shown in red on plan hereto attached and made part hereof, which the **COUNTY OF**

> **LACKAWANNA now owns or in which it has an interest**, situate in the Borough of Dickson City, Lackawanna County, Pennsylvania, […]; including the right of ingress and egress to and from said lines at all times for any of the purposes aforesaid, […] and also the right to cut down, trim, remove, and to keep cut down and trimmed by mechanical means or otherwise, any and all trees, brush, or other undergrowth on said strip of land or adjoining the same which in the judgment of [PPL Electric], its successors, assigns or lessees, may at any time interfere with the construction, reconstruction, maintenance, or operation of said lines […]

Joint Exh. 21 (emphasis added).

The ROW Agreement also specifically contemplates [PPL Electric's] future ability "to construct, operate and maintain, and from time to time to reconstruct additional poles, towers, wires, cables, fixtures and apparatus upon, across, over, under or along the said strip of land." *Id.*

The ROW Agreement indicates that Lackawanna County and [PPL Electric] understood that there was no representation or warranty of title and that the ROW Agreement was made "subject to the rights of redemption, if any, that may now or hereinafter remain in any former owner or other person interested in said premises." *Id.* Further, the ROW Agreement was made by Lackawanna County "free and clear of any and all tax liens which it may hold against" the property. *Id.*

The recorded plan drawing attached to the ROW Agreement depicts two transmission lines: 1) the Peckville-Stanton line, the former name of the Summit-Lackawanna line, and 2) a future line. *Id.* The plan drawing appended to the ROW Agreement depicts a right-of-way over "Property of County of Lackawanna." *Id.* Jt. Stip. at ¶ 56. The recorded plan drawing depicts a 325' wide right-of-way and it also depicts an easement distance length of 3,280 feet from property line to property line in a generally east/west direction. Jt. Stip. at ¶ 57.

Trial Court Opinion, filed 12/14/22, at 1-25 (some citations to record omitted) (footnotes omitted) (footnotes added) (bold in original).

At the conclusion of the non-jury trial, the trial court filed an order and opinion on December 14, 2022. Specifically, the trial court ordered that Count 1 (declaratory judgment) of the Bakers' amended complaint was dismissed for lack of subject matter jurisdiction, and the trial court entered a verdict in favor of Appellees on all remaining counts of the Bakers' amended complaint.

On December 22, 2022, the Bakers filed a timely post-trial motion, and the trial court filed an order on March 3, 2023, which denied the Bakers' post-trial motion in its entirety. On March 6, 2023, the Bakers filed a praecipe for the entry of judgment in favor of Appellees and against the Bakers. On March 30, 2023, the Bakers filed a notice of appeal, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, the Bakers sets forth the following issues in their "Statement of the Questions Involved" (verbatim):

A. Did the trial court err in dismissing Mr. & Mrs. Baker's claim for declaratory relief for lack of subject matter jurisdiction and/or otherwise concluding that the County of Lackawanna was an indispensable party?

B. Did the trial court err in rejecting Mr. & Mrs. Baker's claims for unjust enrichment, conversion, trespass to land, and trespass to personal property and/or in concluding that the interests of Mr. & Mrs. Baker were not superior to the pre-existing rights held by PPL?

C. Did the trial court improperly conclude that a sketch attached to the purported Easement Agreement benefitting PPL was sufficient despite the uncontroverted evidence that the length of the easement area depicted therein was "short" by 394.29 feet and/or in concluding that the purported Easement was "ambiguous"?

The Bakers' Brief at 5.

- 20 -

In their first issue, as to their claim for declaratory judgment, the Bakers contend the trial court erred in concluding that Lackawanna County was an indispensable party to the instant litigation such that the Bakers' failure to join Lackawanna County resulted in the trial court lacking subject matter jurisdiction. Specifically, the Bakers contend the following portion of the trial court's analysis is not supported by substantial evidence and constitutes an error of law:

> The evidence from trial in this matter indicates that Lackawanna County has continued ownership rights and interests in the Edginton Tract based on the 1965 County Treasurer's sale. [The Bakers] did not produce any evidence that Lackawanna County's ownership interests in the Edginton Tract were ever sold, transferred, or otherwise extinguished by subsequent events….

The Bakers' Brief at 20 (quoting Trial Court Opinion, filed 12/14/22, at 28).

In this vein, the Bakers aver there is insufficient evidence to sustain the trial court's finding that Lackawanna County obtained an interest in the Edginton Tract following the 1965 Treasurer's tax sale. For example, the Bakers contend notice of the 1965 tax sale was not properly advertised and included incorrect descriptions of the property. Thus, the Bakers aver the 1965 Treasurer's sale was, as a matter of law, *void ab initio*, and, therefore, Lackawanna County did not obtain an interest in the Edginton Tract. Consequently, the Bakers aver the Lackawanna County Commissioners did not have the authority to grant an easement or other interest to PPL Electric.

Further, in support of their contention, the Bakers aver the unrefuted evidence establishes that Lackawanna County conducted a second tax sale on

the Edginton Tract in 1975, and they reason that, since "Lackawanna County would not have conducted a second sale in 1975 had it held title or any other interest in the subject premises[,]" the trial court erred in holding Lackawanna County acquired an interest during the 1965 tax sale. The Bakers' Brief at 25.

Moreover, the Bakers aver the evidence reveals the Edginton Tract was redeemed "in 1984 and treated accordingly by Lackawanna County." *Id.* at 23. In support thereof, the Bakers aver the unrefuted evidence establishes that a notation on the Tax Claim Docket indicates the Edginton Tract was redeemed on October 1, 1984, per the Lackawanna County Tax Claim Bureau Director, Thomas Harrison. *See id.*

> Preliminarily, we note:
>
>> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.
>>
>> Additionally, [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Erie Ins. Group v. Catania*, 95 A.3d 320, 322 (Pa.Super. 2014) (citations omitted).

> This Court has held the following:
>
>> Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. "Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised *sua sponte.*"

- 22 -

*Barren v. Dubas*, 441 A.2d 1315, 1316 (Pa.Super. 1982) (internal quotation marks and citations omitted). This requirement is reflected in our Rules of Civil Procedure.

**Rule 1032. Waiver of Defenses. Exceptions. Suggestion of Lack of Subject Matter Jurisdiction or Failure to Join Indispensable Party**

(a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

\*\*\*

(b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

Pa.R.C.P. 1032[.] *See id.* at 2227(a) (stating, "[p]ersons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants[ ]"). Whether a court has subject matter jurisdiction presents a question of law, making our standard of review *de novo* and the scope of our review plenary. *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 961 A.2d 96, 101 (2008).

"[A] party is indispensable 'when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'" *City of Phila. v. Commonwealth*, 575 Pa. 542, 838 A.2d 566, 581 (2003), *quoting* *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184, 189 (1988). If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently

held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.

> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?

*Martin v. Rite Aid of Pa., Inc.*, 80 A.3d 813, 814 (Pa.Super. 2013)[.] "In determining whether a party is indispensable, the basic inquiry remains 'whether justice can be done in the absence of a third party.'" *Pa. State Educ. Ass'n v. Commonwealth*, 616 Pa. 491, 50 A.3d 1263, 1277 (2012)[.]

> This Court has held that in a quiet title action, all parties who claimed title to the property at issue must be joined as indispensable parties. *Hartzfeld v. Green Glen Corp.*, 552 A.2d 306, 310 (Pa.Super. 1989).

*Orman v. Mortgage, I.T.*, 118 A.3d 403, 406-07 (Pa.Super. 2015) (some citations, quotation marks, and quotations omitted). *See N. Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 30 (Pa.Super. 2015) ("The law requiring joinder of indispensable parties is strict and non-waivable. No matter how exhaustive or diligent the plaintiff's title search may be, its failure to join an indispensable party deprives the court of jurisdiction.") (footnote and citation omitted)).

Further,

> [We have held that] the fee owner of land is an indispensable party to litigation over the right to use and enjoy his property. We have explained that…there can be no question that the fee simple owner of [a] servient tenement is an indispensable party. The right to the use and enjoyment of his property will be adversely affected by any litigation involving the

- 24 -

easement and, therefore, he must be joined. The failure to do so deprives the court of jurisdiction.

Similarly, when there is a dispute as to the existence of an easement, all owners of servient tenements have a material interest in the controversy and should be joined as defendants, even though such an owner may have had no part in the interference with, or obstruction of, the alleged easement. [**See**] **Tigue v. Basalyga**, [451 Pa. 436, 304 A.2d 119 (1973)] (in suit to set aside deed allegedly obtained through fraud, deceased's personal representative was indispensable party); **Kelley v. Kelley**, 382 Pa. 537, 115 A.2d 202 (1955) (when adjudicating interests in coal lands, all co-tenants are indispensable parties)[.]

**Strasburg Scooters, LLC v. Strasburg Rail Road, Inc.**, 210 A.3d 1064, 1070 (Pa.Super. 2019) (some citations, quotation marks, and quotations omitted).

Here, in addressing the Bakers' issue, the trial court initially indicated the following:

This matter presents complex issues involving real property and tax sales that occurred several decades ago. In the late 1960s, Lackawanna County represented to [PPL Electric] that it owned or had an interest in the Edginton Tract when the ROW Agreement was executed. [PPL Electric] then over time exercised the rights it claims were afforded to it through the ROW Agreement. In seeking a declaration that [PPL Electric] has no rights over the Edginton Tract, [the Bakers] raise questions regarding the validity of the tax sale conducted by the Lackawanna County Treasurer in 1965. Based on the documentation in the trial record, the Edginton Tract was not redeemed by any party in [the Bakers'] chain of title after the Lackawanna County Treasurer acknowledged a deed to the Lackawanna County Commissioners in 1965. There is also no documentation of a subsequent private sale. For reasons that were unclear at the time of trial, the Lackawanna County Tax Claim Bureau conducted a subsequent tax sale on the Edginton Tract in 1975 after Frank and Irene Riefenberg claimed an interest in the property. The property was redeemed from the 1975 tax sale in 1984 by the Riefenbergs.

Trial Court Opinion, filed 12/14/22, at 2-3.

Additionally, the trial court relevantly indicated:

> [The Bakers'] first cause of action against [PPL Electric] is for declaratory judgment.  [The Bakers] seek declarations that [PPL Electric] does not have the right to use the Edginton Tract for any purpose whatsoever.  [The Bakers] also seek a declaration that [PPL Electric] does not have a right-of-way over, on, or across the Edginton Tract….
>
> All of [PPL Electric's] interests in the Edginton Tract derive from the ROW Agreement with Lackawanna County, which asserted ownership rights in the property following the 1965 County Treasurer's sale.  [The Bakers'] amended complaint challenges Lackawanna County's ownership rights to the Edginton Tract, yet Lackawanna County was never sued or joined as a party in this litigation.  [The Bakers] chose not to bring an action to quiet title against Lackawanna County or attempt to have the 1965 County Treasurer's sale set aside.  In making the findings of fact above, [the trial] court is mindful of the fact that Lackawanna County was not properly named as a party to the declaratory judgment action and that [the Bakers], in seeking redress against [Appellees], are also seeking redress against Lackawanna County.
>
> \*\*\*
>
> The requirement under [42 Pa.C.S.A. §] 7540(a) "that all who have an interest in the declaration be made parties to the action is mandatory."  ***HYK Const. Co. v. Smithfield Twp.***, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010)[.] Section 7540(a) "constitutes a jurisdictional requirement with respect to joinder of indispensable parties."
>
> \*\*\*
>
> The evidence from trial in this matter indicates that Lackawanna County has continued ownership rights and interests in the Edginton Tract based on the 1965 County Treasurer's sale. [The Bakers] did not produce any evidence that Lackawanna County's ownership interests in the Edginton Tract were ever sold, transferred, or otherwise extinguished by subsequent events. The Riefenbergs' ownership claims to the Edginton Tract in [the Bakers'] chain-of-title came about from the 1974 quit-claim deed from Bruce Edginton and then from the 1980 quit-claim deed from the Berton E. Davis heirs, not from Lackawanna County.  There is

also no evidence of redemption after the 1965 County Treasurer's sale. Significantly, there was no evidence produced that there was any private sale of the Edginton Tract by the Lackawanna County Tax Claim Bureau to the Riefenbergs following the 1965 tax sale.

Moreover, the record regarding the actions by the Lackawanna County Tax Claim Bureau in the 1970s and 1980s was not developed at trial. From the record, the [trial] court cannot piece together the Lackawanna County Tax Claim Bureau's interactions with Frank and Irene Riefenberg after the Riefenbergs claimed an interest in the Edginton Tract. The only conclusion the [trial] court can reach is that Lackawanna County has continuing rights and interests in the Edginton Tract related to [the Bakers'] claims for declaratory relief against [PPL Electric].

Inherent in any declaration in favor of [the Bakers] and against [PPL Electric] would include findings that: 1) the 1965 tax sale by the Lackawanna County Treasurer was void; 2) Lackawanna County never enjoyed ownership rights in the Edginton Tract; and 3) Lackawanna Couty was without authority to grant an easement to [PPL Electric] in 1969. Although a deed to Lackawanna County regarding the Edginton Tract has not been produced in this litigation, the Lackawanna County Treasurer acknowledged a deed in open court to the County Commissioners for this tract of land in 1965 as part of the tax sale proceedings. The parties [in the instant matter] stipulated to this fact. Furthermore, Lackawanna County, with ownership rights to the tract, granted an easement to [PPL Electric] in June of 1969, which is filed of record in the Recorder of Deeds office and was certified and filed with [the] Pennsylvania Public Utilities Commission in 1970. [Joint] Exh. 21.

It appears that [the Bakers'] action against [PPL Electric] is also an attempt to quiet title against Lackawanna County. For example, [the Bakers] proffered Mr. Durkovic, who opined that Lackawanna County never owned the Edginton Tract. [N.T.,] 8/25/22, at 159-60, 175. Mr. Durkovic believes [the Bakers] have "a very concise record of […] ownership of the property." *Id.* at 180; [N.T.,] 8/26/22, at 43 ([Mr. Durkovic] opining that [the Bakers] have a "very large interest in the property, percentage wise, at the very least."). However, Mr. Durkovic also referenced his involvement in other projects on Bell Mountain. [N.T.,] 8/25/22, at 215. Mr. Durkovic testified that "they're just a mess in every way you could think of. The people [that] think they have good [t]itle up there are way wrong." *Id.* Although it appears

- 27 -

Mr. Durkovic may have been referring to Lackawanna County's title or the title of other property owners on Bell Mountain, the same commentary would be reflective of [the Bakers'] claims to ownership of the Edginton Tract.

From the above testimony, [the Bakers'] ownership interests in the Edginton Tract are competing with Lackawanna County's outstanding ownership interests and [PPL Electric's] claims to easement rights from the ROW Agreement with Lackawanna County. Thus, Lackawanna County's rights are so interconnected with [the Bakers'] claims that no decree can be made against [PPL Electric] without deciding Lackawanna County's current rights in the property. First and foremost, the rights of Lackawanna County would be impacted by the *res judicata* or collateral estoppel effects of any declaratory judgment in favor of [the Bakers]. Second, [PPL Electric's] rights under the ROW Agreement are not the same property interests that Lackawanna County would have, and it cannot be said that [PPL Electric] adequately represented Lackawanna County's interests at trial. [PPL Electric] raised some of Lackawanna County's possible defenses, but [PPL Electric] relied on these defenses only in support of its right-of-way interests. Lackawanna County, on the other hand, would have interests that correlate with absolute title.

At the time of the 1965 Treasurer's sale, Sections 7 and 8 of the Act of May 29, 1931, P.L. 280, as amended, 72 P.S. §§ 5971g, 5971h ("County Return Act"), provided for the procedure to be followed when a county treasurer sold lands for delinquent taxes. *See Appeal of City of Erie*, 46 A.2d 592 (Pa.Super. 1946) (*en banc*); *Fidei v. Underwood*, 435 A.2d 1275 (Pa.Super. 1981). In the course of such a sale, Section 10 of the County Return Act, required that "[a]ny such property, for which an amount sufficient to pay such taxes, interest, and the costs is not bid shall be purchased by the county commissioners." *See* 72 P.S. § 5971j; *C.A. Hughes & Co. v. Metzger*, 491 A.2d 959, 961 n.1 (Pa. Cmwlth. 1985).

Furthermore, Section 12 of the County Return Act states:

If no objection or exceptions [to the sale] are filed […] and the sale confirmed absolutely, the validity of the assessment of the tax and its return for nonpayment, and the validity of the proceedings of the treasurer with respect to such sale shall not thereafter be inquired into judicially, in equity or by civil

proceedings, by the person or persons in whose name such property was sold, his or her or their heirs, or his, her or their grantees or assigns, subsequent to the date of the assessment of the taxes for which such sale was made; and such sale, after the period of redemption shall be terminated, shall be deemed to pass a good and valid title to the purchaser free from any liens or encumbrances whatsoever, except such liens as are hereinbefore specifically saved, **and in all respects as good and effective as if acquired by a sheriff's deed**.

72 P.S. § 5971l (emphasis added).

"The effect of the provision, 'in all respects as good and effective as if acquired by a sheriff's deed,' is that a treasurer's deed can be defeated only by fraud or want of authority to sell, and even gross defects or irregularities are cured by the absolute confirmation of the sale." ***Thompson v. Frazier***, 48 A.2d [6], 9 ([Pa.Super.] 1946).

Section 16 of the County Return Act provides:

The right of redemption of lands purchased by the county commissioners shall remain in the real owner of such lands, or other persons interested, **for two years after such sale**[.]

72 P.S. § 5971p (emphasis added). ***See also Thompson***, 48 A.2d at 9.

However, as explained in ***Thompson***:

[U]nder the Act of July 28, 1941, P.L. 535, 72 P.S. § 6105.1 *et seq.*, ["any person who was or is entitled under existing law to redeem such property"] had a right to redeem 'so long as the title thereto remains in said political subdivision'[.]

[U]nder the Act of July 17, 1935, P.L. 1091, § 1, 72 P.S. § 5879, the commissioners may permit redemption 'so long as the title thereto remains in the county.'

[***Thompson***,] 48 A.2d at 9; ***See also*** 72 P.S. § 6105.1; 72 P.S. § 5879.

Regarding Lackawanna County's [alleged] inability to enter into the ROW Agreement in 1969, under the Act of May 18, 1945, P.L. 685, 72 P.S. § 6153.1:

> The county commissioners of any county may grant rights of way or licenses for rights of way for roads, pipelines, electric lines, telephone lines, and telegraph lines on and across lands purchased by the county at any tax sale and owned by the county after the period of redemption provided by law has expired. They shall charge for such rights of way and licenses such remuneration and damages as they deem the conditions and circumstances warrant.

*Id.*

It appears that Lackawanna County complied with the above statutes based on [PPL Electric's] assertion of Lackawanna County's interests.

However, as [the Bakers] argue, "a tax sale of land is not valid unless both the assessment and the conveyance by the treasurer sufficiently identify the parcel sold." ***Carratelli v. Castrodale***, 137 A.2d 805, 807 ([Pa.Super.] 1958). As explained in ***Sarous v. Morgan***, 90 A.2d 353 ([Pa.Super.] 1952) (*en banc*), relied upon by [the Bakers] in this matter:

> "It is well-settled rule of this Commonwealth that no tax sale of land is valid unless both the assessment and the conveyance by the treasurer contain sufficient descriptions to identify and disclose the property taxed and sold. The land must be so identified that the owner, the collector, and the public can determine what property is being assessed or sold." ***Boulton v. Starck***, 369 Pa. 45, 85 A.2d 17, 20 [(1951)].

> 'Whether an assessment identifying a property by a name other than that of the true owner is sufficient must necessarily depend upon numerous facts and circumstances. Important factors in such determination are the nature of the land conveyed, whether rural or urban, and whether there are other lands in the immediate vicinity owned by the same person.' ***Humphrey v. Clark***, 359 Pa. 250, 58 A.2d 836, 839 [(1949)].

> If there be no valid assessment, the tax sale is void, and on [*sic*] interest passes to the county as a result thereof. ***Hunter v. McKlveen***, 361 Pa. 479, 65 A.2d 366 [(1949)].

[***Sarous***,] 90 A.2d at 354 (formatting modified).

- 30 -

[The Bakers] presented no evidence regarding when Lackawanna County's tax assessment of the Edginton Tract occurred prior to 1965, which makes it difficult, if not impossible, to determine whether the parcel was sufficiently identified for the purposes of the Treasurer's sale. Fifty-seven years later, much is unresolved from the trial record.

For example, focusing on the "Edington Tr. Bell Mountain" notation in the advertisements and Treasurer's Deed book, the facts indicate that George T. Edginton died in 1921, and Louise Edginton died in 1940. George T. Edginton's 1913 will and 1918 codicil devised George T. Edginton's interest in the Edginton Tract to Louise Edginton upon his death and not to any of George T. Edginton's children. The parties supplied no record or evidence of any heirs to Louise Edginton, and there is no record of probate. There is also the matter of Berton E. Davis's interest in the Edginton Tract. Berton E. David died in 1913, and Verna Davis died in 1938. The inventory of Verna Davis's estate did not list out any real estate in Dickson City or Scott Township. Records of the Edginton descendants and Davis descendants claiming an interest in the Edginton Tract were not filed until 1974 and 1980 respectively. If Lackawanna County's tax assessment for the parcel occurred after 1940 based on the record available to [the trial] court, it is understandable why the Edginton Tract was assessed as having an unknown owner at the time of the 1965 sale.

Regarding the legitimacy of the 1965 County Treasurer's sale, [PPL Electric] also raised the effects of 21 P.S. § 283.2, which validated country [*sic*] treasurer's deeds issued prior to December 31, 1965, if there was no proof of service, improper posting, or improper filing of the certificate of posting. However, as [the Bakers] point out, 21 P.S. § 283.3 "may not be held to provide a cure for […] serious procedural defects." ***Fidei***, 435 A.2d at 1277.

However, ***Fidei*** involved a **quiet title action** filed by purchasers of a property from a county after a tax sale against a decedent's heirs, not a declaratory judgment action against a third-party easement holder such as this. In review of ***Fidei***, the decedent purchased a tract of land in 1925 and died testate in 1947, and the residuary clause of the decedent's will passed the property in question to the decedent's three sons. [***Fidei***], 435 A.2d at 1275. Taxes were not paid, and the county treasurer sold the property to the county commissioners in the 1950s. [***Id.*** at 1276.] Notice was sent to the decedent, which was returned unclaimed, and no notice was sent to the sons of the decedent.

[*Id.* at 1276-77.]  The Superior Court invalidated the tax sale and was critical of the county treasurer's actions and county assessor's diligence in determining ownership prior to the tax sale.  [*Id.* at 1277 n.4.] Relevant to [the instant] case, the Superior Court also passed on the questions of whether the description of the property was insufficient in the advertised notices of the sale. *Id.*

The [trial] court hesitates to apply *Fidei* in this declaratory judgment action due to serious deficiencies in the exhibits and testimony offered [in this case] by [the Bakers] and [PPL Electric] and because Lackawanna County is not a party here.[4]  The parties and their witnesses attempted to explain gaps or ambiguities in Lackawanna County's records at trial, and each side attempted to use these gaps or ambiguities in support of their positions.  However, no witnesses from Lackawanna County were called.  Moreover, [the trial] court does not believe that all of Lackawanna County's records regarding the Edginton Tract were available for consideration based on Lackawanna County's absence from this litigation.  The trial record does not even indicate whether subpoenas were ever served on Lackawanna County.

Complicating this matter further, the Real Estate Tax Sale Law ("RETSL") was enacted in 1947, creating a tax claim bureau in each county and authorizing the bureau to receive and collect taxes. The RETSL repealed many of the acts cited by the parties "in so far as they appl[ied] to taxing districts coming within the provisions of and operating under [the RETSL]." 72 P.S. § 5860.80l (repealing, *inter alia*, the Act of March 13, 1815, P.L. 177; the Act of May 29, 1931, P.L. 280; and the Act of May 29, 1941, P.L. 280).  The RETSL was effective January 1, 1948. [*See*] 72 P.S. § 5860.803.

The trial court [in this matter] contained no reference as to when Lackawanna County adopted the RETSL; however, the Lackawanna County Treasurer was still selling real estate for delinquent taxes in 1965 under the County Return Act.  The Commonwealth Court aids in relevant history:

> The [Lackawanna] County Commissioners in January of 1973 established a new tax collection system by resolution adopting the [RETSL].

---

[4] To the extent the Bakers challenge the trial court's analysis and application of *Fidei* to the instant matter, we find no error.

The new system established by the [RETSL] provides for the creation of a Tax Claims Bureau to take over delinquent tax collection duties from the County Commissioners and the County Treasurer.

*Hargreaves v. Mid-Valley Sch. Dist.*, 396 A.2d 894, 895 ([Pa. Cmwlth.] 1979).

The provisions of the RETSL impact any analysis of the Lackawanna County Tax Claim Bureau's actions in the 1970s and 1980s. As noted above, many of the foregoing tax sale statutes were supplanted by the RETSL.

The record reflects that Lackawanna County asserted ownership rights in the Edginton Tract in 1969 when it entered into the ROW Agreement with [PPL Electric] and Lackawanna County maintained that interest in 1973 when Lackawanna County established its tax claim bureau.

Pursuant to 72 P.S. § 5860.612-1 of the RETSL, if property is put up for public sale and sold to the county commissioners, the county "shall take and have an absolute title, free and clear of all tax and municipal claims, mortgages, liens and charges and estates of whatsoever kind, except ground rents […]" *Id.* Moreover, "[a]ny property purchased at such sale by the county may thereafter by the county commissioners be […] (2) used for any suitable public purpose by the county." *Id.*

Section 701 of the RETSL addresses tax delinquent properties that were acquired by county commissioners at county treasurer's sales prior to the effective date:

Where the county commissioners, any taxing district or trustee for any taxing districts have, prior to the time when this act became effective in any taxing district, acquired any property at a tax sale or a sale on a judgment for a tax claim, unless such property or interests shall have been resold or used for a public purpose, for which the property might otherwise have been acquired, **such commissioners, taxing district or trustees shall deliver possession of such property to the bureau together with all the pertinent information, as to when and how it was acquired, the taxes for which it was offered for sale at the time, the party which purchased it, the known mortgages, liens or estates, if any, not discharged by such sale, and the taxes which**

- 33 -

> **would have been levied against such property had it not been purchased by the taxing district.**
>
> Thereafter all rights and title to the property, held by such taxing district or trustee, shall vest in the county, as trustee, for all taxing districts having the power to levy taxes against such property, if it were privately owned, and the bureau shall become the agent of all taxing districts having an interest in the management and control of such property with the following powers and duties with respect thereto.

72 P.S. § 5860.70l (formatting modified) (emphasis added).

By operation of law, the Edginton Tract was turned over to the Lackawanna County Tax Claim Bureau in 1973 when the tax claim bureau was established, and the bureau acted as a trustee for the taxing districts. *See Pennsylvania Game Comm'n v. Lackawanna Cnty. Tax Claim Bureau*, 422 A.2d 1218, 1218 ([Pa. Cmwlth.] 1980). The RETSL sets forth various duties and powers of the bureau as agent. 72 P.S. § 5860.702. Moreover, property turned over to the tax claim bureau "shall not be subject to redemption[.]" *Id.*

During trial, [the Bakers] offered limited records from the Lackawanna County Tax Claim Bureau regarding the events of 1974, 1975, and 1984, including when Frank and Irene Riefenberg claimed an interest in the Edginton Tract, when the property was later exposed at a tax sale, and when the property was redeemed by the Riefenbergs. *See* [Joint] Exh. 20. After 1973, the Edginton Tract could not be redeemed by operation of law under Section 702. In 1974, pursuant to the RETSL, the Lackawanna County Tax Claim Bureau would have been authorized to sell the Edginton Tract at a public or private sale to the Riefenbergs. *See Petition of Tax Claim Bureau*, 366 Pa. 404, 77 A.2d 403, 406 (1951) (discussing 72 P.S. § 5860.101 *et seq.,* 5860.601 *et seq.*, 5860.701 *et seq.*, 5860.702(h)). However, no evidence of such a sale was ever presented at trial.

[The Bakers] proffered Mr. Durkovic, who was the Chief Clerk for the Lackawanna County Assessor's Office in the 1970s. Nevertheless, Mr. Durkovic's testimony regarding Lackawanna County's actions is unable to be given weight in this matter given his role as [the Bakers'] expert, his personal interests as [the Bakers'] title searcher, and the doubt cast upon the thoroughness of his 2009 title search by cross-examination and by Mr. Fogarty's research and testimony. Moreover, Mr. Durkovic did not work in

the Lackawanna County Treasurer's Office, which conducted the 1965 tax sale nor did he work in the Lackawanna County Tax Claim Bureau, which was the trustee of the [subject] property in that relevant time frame. Neither Mr. Durkovic, nor Mr. Fogarty for that matter, could competently answer questions as to the Lackawanna County Tax Claim Bureau's actions. [The Bakers'] presentation of evidence is deficient in this regard as to the status of their title to the property.

Additionally, the real estate appraisal study card from the Lackawanna County Assessor's Office raises numerous questions that [the trial] court is unable to resolve, despite the testimony of Mr. Durkovic and Mr. Fogarty. Notations indicating "1974 carried as unknown owner" and "Revision int. to T.C." were not resolved. [PPL Electric] believes the second notation references a reversionary interest to Lackawanna County's Tax Claim Bureau. *See* [N.T.,] 8/25/22, at 43-44. Mr. Durkovic, however, testified that he believes this notation is not a reference to a reversionary interest but [is] a "revision to Tax Claim." *Id.* at 142, 199-200. Mr. Durkovic's explanation, however, ignores the abbreviation, "int." After weighing Mr. Durkovic's testimony, the notations on the real estate appraisal study card from the Lackawanna County Assessor's Office ultimately [lead] to the conclusion that Lackawanna County maintains rights in the Edginton Tract and is an indispensable party. ***See Pocono Pines Corp. v. Pennsylvania Game Comm'n***, 464 Pa. 17, 345 A.2d 709, 711 (1975) (dismissing an action to quiet title with the Board of Property for lack of jurisdiction for failure to join an indispensable party where the United States of America retained a reversionary interest in the property).

In light of the above, [the trial] court cannot entertain [the Bakers'] requests for declaratory relief without Lackawanna County as a party. Where a jurisdictional defect exists with regard to Section 7540(a) of the Declaratory Judgment Act, dismissal is appropriate. ***See Pilchesky*** [***v. Doherty***], 941 A.2d [95], 101 ([Pa. Cmwlth. 2008]) (citations omitted)[.] ***See also Mains v. Fulton***, 423 Pa. 520, 224 A.2d 195, 196 (1966) (holding that a declaratory judgment action could not proceed when all property owners were not joined in a dispute over the location of a right-of-way for transmission lines in a subdivision because other lot owners with an interest in the litigation were not named).

Trial Court Opinion, filed 12/14/22, at 25-39 (some citations and quotations omitted) (bold in original) (footnote added).

We find no abuse of discretion or error of law. *See Erie Ins. Group*, *supra*. Contrary to the Bakers' averment, the trial court's factual conclusions are supported by adequate evidence. *See id.* Specifically, as the trial court found, Lackawanna County obtained an interest in the Edginton Tract as a result of the 1965 Treasurer's tax sale. To the extent the Bakers contend the tax sale was *void ab initio* due to alleged defects, we note, as the trial court properly found, a confirmation absolute was issued on December 21, 1965, and the County Treasurer then acknowledged a Deed to the County Commissioners for the Edginton Tract. *See Thompson*, 48 A.2d at 9 ("[A] treasurer's deed can be defeated only by fraud or want of authority to sell, and that even gross defects or irregularities are cured by the absolute confirmation of the sale.") (citation omitted)).

Moreover, as the trial court found, the Bakers, who sought the declaratory judgment against PPL Electric, offered "limited records" regarding the events of 1974, 1975, and 1984, including when the Riefenbergs claimed an interest in the Edginton Tract, when the property was later exposed at a tax sale, or when the property was redeemed by the Riefenbergs. *See* Trial Court Opinion, filed 12/14/22, at 37. As the trial court concluded, because Lackawanna County was not joined as a party, there were "numerous questions that the [trial] court was unable to resolve[.]" *Id.* at 38. Simply

put, the trial court neither abused its discretion nor committed an error of law in holding: 1) the absent party (Lackawanna County) had a right or interest in the Edginton Tract; 2) the nature of the right or interest was material to the Bakers' request for declaratory relief (*i.e.*, whether Lackawanna County had the right to enter into a ROW Agreement with PPL Electric); 3) the right or interest was essential to the merits of the Bakers' request for declaratory relief (whether PPL Electric has a right-of-way over, on, or across the Edginton Tract); and 4) justice could not be afforded without violating the due process rights of the absent party. **See id.** at 28 (quoting **Guiser v. Sieber**, 237 A.3d 496, 505 (Pa.Super. 2020) (citation omitted)). Accordingly, the trial court properly found Lackawanna County was an indispensable party to this matter. **See Orman**, **supra**.

This does not end our inquiry, however, since the Bakers aver that, assuming, *arguendo*, Lackawanna County is an indispensable party, the trial court "should have afforded [the Bakers] the opportunity to join [the County] in the litigation[.]" The Bakers' Brief at 34. Specifically, the Bakers contend that "[g]iven the significant and unquestioned due process issues associated with the 1965 tax sale, the [trial] court should have allowed a joinder of the County rather than dismissing the [Bakers'] complaint." **Id.** at 35.

Relevantly, Pennsylvania Rule of Civil Procedure 1032(b) provides the following:

> (b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there

has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

Pa.R.C.P. 1032(b).

Moreover, Pennsylvania Rule of Civil Procedure 2232 provides the following:

(c) At any stage of an action, the court may order the joinder of any additional person who could have joined or who could have been joined in the action and may stay all proceedings until such person has been joined. The court in its discretion may proceed in the action although such person has not been made a party if jurisdiction over the person cannot be obtained and the person is not an indispensable party to the action.

Pa.R.C.P. 2232(c).

Here, in rejecting the Bakers' claim, the trial court relevantly indicated the following:

While [under some circumstances] the [trial] court can order that Lackawanna County be joined, it is "not possible" [in this case] for several reasons. First, [the Bakers] pursued declaratory relief and other claims against [PPL Electric] instead of, or without including, a cause of action to quiet title against Lackawanna County.  Rather than attack the 1965 County Treasurer's sale directly by filing a quiet title action against Lackawanna County, [the Bakers] chose to collaterally attack the tax sale in these proceedings against [PPL Electric].

Theoretically, Lackawanna County could be joined to [the Bakers'] declaratory judgment claim against [PPL Electric]; however, this would ignore the very purpose of quiet title actions, which [the Bakers] deliberately chose not to pursue.  An additional cause of action to quiet title against Lackawanna County would have been the most appropriate venue here given the long, convoluted history and questions as to ownership of the Edginton Tract.

The Pennsylvania Supreme Court promulgated Pennsylvania Rule of Civil Procedure 1061 regarding quiet title actions to "unify into one single procedure all of the diverse procedures by which clouds on title were formerly tried." *Siskos v. Britz*, 567 Pa. 689, 790 A.2d 1000, 1006-07 (2002)[.] An action to quiet title may be brought to "determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land[,]" or "obtain possession of land sold at a judicial or tax sale." Pa.R.C.P. 1061(b)(2), (b)(4).

As summarized:

> The purpose of a quiet title action is to settle competing claims to interests in property or to determine right or title or the validity of any deed affecting any interest in land. […]
>
> **A quiet title action is the appropriate forum for testing the validity of titles obtained at tax sales.**

*Cornwall Mountain Invs., L.P. v. Thomas E. Proctor Heirs Tr.*, 158 A.3d 148, 160 (Pa.Super. 2017) (emphasis added)[.]

If Lackawanna County was ordered to be joined, the [trial] court would also have to grant leave for [the Bakers] to alter their action to one in quiet title against Lackawanna County, and [the Bakers] failed to proceed in this manner.

Additionally, so much time has elapsed from the 1965 County Treasurer's sale that it is appropriate to consider the parties' statute of limitations arguments here. [PPL Electric] takes the position that [the Bakers'] action is time-barred to the extent that [the Bakers] challenge Lackawanna County's ownership interests in the Edginton Tract.

First, [the Bakers] proceeded in this matter with a declaratory judgment action asserting additional claims addressed below, not by way of action to quiet title or a petition to set aside the 1965 tax sale as void. Declaratory judgment actions are subject to a four-year limitations period under Pennsylvania law. *Green v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n*, 158 A.3d 653, 660 (Pa.Super. 2017). The statute of limitations commences to run in a declaratory judgment action "when 'the cause of action accrued.'" *Selective Way Ins. Co. v. Hosp. Grp. Servs. Inc.*, 119 A.3d 1035, 1048 (Pa.Super. 2015) (*en banc*) (quoting 42 Pa.C.S.A. § 5502(a-b)). "A cause of action for a declaratory judgment accrues when an actual controversy exists

between the parties." **Id.** [The Bakers] first obtained a quit-claim deed to the Edginton Tract from the Riefenberg Trust in December of 2009. The actual controversy between [the Bakers] and Lackawanna County existed at that point. Moreover, after this transaction, Mr. Fogarty testified credibly that he reviewed evidence regarding Lackawanna County's ownership interests with [the Bakers] and Ms. Durkovic in a meeting approximately four months later. [N.T.,] 8/30/22, at 77-78, 81-82. As discussed above, [the Bakers] filed suit on July 7, 2015, without naming Lackawanna County as a party.

Likewise, "Section 5527(b) of the Judicial Code, 42 Pa.C.S. § 5527(b), sets forth [that] the statute of limitations applicable to an action to set aside a tax sale is six (6) years." **Pfeifer v. Westmoreland Cnty. Tax Claim Bureau**, 127 A.3d 848, 851 (Pa. Cmwlth. 2015). "[A] cause of action to set aside a tax sale on the basis of deficient notice accrue[s] and the statute of limitations be[gins] to run on the date of the tax sale." **Id.**

The purpose of statute of limitations periods is to expedite litigation and thus discourage delay and the presentation of stale claims, which may greatly prejudice the defense of such claims. **Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.**, 577 Pa. 14, 842 A.2d 334 (2004)[.] Furthermore, they serve to give prompt notice to defendants that claims are being made against them.

[Here,] [i]n their proposed findings of fact and conclusions of law, [the Bakers] argue that the 1965 tax sale can be challenged without reference to the six-year statute of limitations. However, the cases cited by [the Bakers] in opposition to [Appellees'] statute of limitations arguments all involve quiet title actions or actions to set aside a tax sale as void, not a declaratory judgment action against a third-party holder of purported easement rights where an indispensable party was not originally pursued. **See Cornwall Mountain Invs., L.P.**, 158 A.3d at 160 ("Statutes of limitation and repose do not preclude one from defending a **quiet title action** on the basis that a tax sale was void, *i.e.*, where there were jurisdictional defects.") (emphasis added))[.]

A consideration of the above statutes of limitations disfavors joinder at this time. Such joinder would occur fifty-seven years after the tax sale, eleven years after [the Bakers] first purchased an interest in the Edginton Tract, and seven years after [the Bakers] filed suit without naming Lackawanna County as a party.

- 40 -

Joinder of Lackawanna County at this juncture would also upend the proceedings. The pleadings are closed, discovery has been conducted, experts have issued reports, and a non-jury trial has occurred without Lackawanna County involved in the matter. Joinder of Lackawanna County would require this action to start anew to the prejudice of [Appellees], who have devoted years of resources in defending against [the Bakers'] claims.

Based on the testimony of Mr. Baker, Mr. Durkovic, and Mr. Fogarty, [the] [trial] court also concludes that [the Bakers] deliberately chose not to directly transact with or bring suit against Lackawanna County, and such inaction is reflective of [the Bakers'] calculated investment and litigation strategies regarding the Edginton Tract. ***See*** [N.T.,] 8/30/22, at 77-78 ([Mr. Fogarty] describing a 2010 meeting where [the Bakers] and Mr. Durkovic were "surprised" about the Treasurer's Sale to Lackawanna County and an ownership interest in the Dunns, which [the Bakers] later purchased in 2013); ***See also*** [N.T.,] 8/25/22, at 47-49, 54, 64-66 ([Mr. Baker] discussing why [the Bakers] did not pursue Mr. Riefenberg or the Riefenberg Trust); ***Id.*** at 58-60 ([Mr. Baker] testifying he believed that the Summit-Lackawanna line was "not on my parcel" until a survey was conducted years after the transaction with Ms. Riefenberg); ***Id.*** at 85-94 ([Mr. Baker testifying] regarding [the Bakers'] investment decisions and due diligence in the Edginton Tract and the decision to not initially obtain a survey prior to purchase); [N.T.,] 8/26/22, at 18-23 ([Mr. Durkovic testifying] regarding [the Bakers'] knowledge of the Dunns' ownership interest in 2009 from a title search); ***Id.*** at 27-28 ([Mr. Durkovic] testifying that he advised the Bakers to investigate further regarding the existing transmission line prior to [the Bakers] completing the transaction with the Riefenbergs).

For the above reasons, the [trial] court finds that it is "not possible" under Rule 1032(b) to join Lackawanna County in this action. Thus, Count 1 of [the Bakers'] amended complaint seeking declaratory judgment is dismissed for lack of jurisdiction.

Trial Court Opinion, filed 12/14/22, at 40-44 (citations omitted) (emphasis in original).

We find no abuse of discretion or error of law. As the trial court indicated, the Bakers did not seek permission to join Lackawanna County in

this matter until after the trial and adverse verdict. Given the trial court's finding that the Bakers' failure to join Lackawanna County was their own strategic decision, and the request was made well after the statute of limitations had passed, the trial court did not err in this regard. ***See Enright v. Kirkendall***, 819 A.2d 555, 557 (Pa.Super. 2003) (holding where no attempt was made to join an indispensable party within the applicable statute of limitations the complaint was properly dismissed); ***Hubert v. Greenwald***, 743 A.2d 977, 981 (Pa.Super. 1999) ("The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.") (citation omitted)). Accordingly, since the Bakers failed to join Lackawanna County, which is an indispensable party, the trial court properly found it lacked subject matter jurisdiction over the declaratory judgment action.

In their second issue, the Bakers contend the trial court's verdict in favor of Appellees as to the claims for unjust enrichment, conversion, trespass to land, and trespass to personal property is contrary to the evidence. Specifically, the Bakers aver there is no evidence supporting the trial court's holding that the ROW Agreement between PPL Electric and Lackawanna County is valid and enforceable. Moreover, in their third issue, the Bakers contend the trial court erred determining the scope of the easement via use of a sketch, which was attached to the ROW Agreement.

However, as the trial court noted:

> Declaratory relief is cumulative and additional, not in place of other forms of relief and an action for declaratory judgment is designed to operate with, not instead of, any underlying dispute. ***Bottomer v. Progressive Cas. Ins. Co.***, 816 A.2d 1172, 1176 (Pa.Super. 2003)[.]
>
> [The Bakers] also pursued other claims against [PPL Electric] in their Amended Complaint, including causes of action for unjust enrichment, conversion, trespass to land, and trespass to personal property. The parties invite [the trial] court to consider all claims and defenses, [however;] as noted above, [the Bakers'] theories of liability flow from a determination that the 1965 County Treasurer's sale is *void ab initio* and that Lackawanna County could not convey any right-of-way interest to [PPL Electric] over the Edginton Tract.
>
> Thus, [the trial] court also finds that Lackawanna County is an indispensable party to [the Bakers'] remaining claims for the same reasons set forth above based on Lackawanna County's continued rights and interests to the Edginton Tract and it is "not possible" to join Lackawanna County at this time.

Trial Court Opinion, filed 12/14/22, at 44-45.

We agree with the trial court's sound reasoning and decline to address the Bakers' remaining issues further. Simply put, Lackawanna County was an indispensable party to all claims raised by the Bakers, and because of Lackawanna County's absence from this matter, the trial court lacked subject matter jurisdiction. ***See Orman***, ***supra***.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>02/08/2024</u>